UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| LYDIA RIVERA, | : | **CIVIL NO. 1:06-CV-1742** |
| | : | |
| Plaintiff | : | (Judge Caldwell) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| LINDA S. McMAHON, | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |


**REPORT AND RECOMMENDATION**


The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the claim of the plaintiff for Social Security disability insurance benefits.


On November 12, 2002, the plaintiff, Lydia Rivera, applied for disability insurance benefits. She claimed that she became disabled on November 6, 2002, as the result of osteoarthritis, cervical disc disease, chondromalacia left

knee, sleep apnea, carpal tunnel syndrome, fibromyalgia, depression, and anxiety.  The application was denied on March 18, 2003.  The ALJ denied the application on April 26, 2004.  The Appeals Council ordered a remand on October 3, 2005.  The ALJ held a second hearing on January 6, 2006.

At the first hearing the plaintiff and a vocational witness testified.  Tr. 759-789.  At the second hearing the plaintiff and a vocational witness testified.  Tr. 790-842.  The ALJ indicated his intention to decide the case based upon the second hearing record.  Tr. 793.  We will summarize the second hearing testimony.

The plaintiff stated that while she had not worn wrist splints at the first hearing she did wear them at the second hearing because testing had revealed a recurrence of carpal tunnel syndrome.  She lives with her boyfriend and her daughter.  Her boyfriend does not work.  Her daughter is a college student.  Ms. Rivera is on welfare.  She had worked in a clothing factory, cutting excess strings from garments and packing garments.

She stated that she performs no chores around her home. Her boyfriend and her daughter perform the chores. Her son's girlfriend helps. Ms. Rivera does less than she used to because of pain and her depression.

She is receiving treatment for her depression. She sees a psychiatrist and she attends group therapy. She takes Paxil, Risperdal and Ativan.

She is awakened from sleep by her pain. She uses a C-PAP machine for sleep apnea. When awakened by pain, she takes out her C-PAP. She switched from Ritalin to Provigil to address her sleep apnea. She also sees Dr. Robinson, her pulmonary doctor, and Dr. Hamilton, her rheumatologist. She also sees Dr. Butera for pain in her spine and neck and right shoulder.

She made an effort to return to work at Dalco Industries, a former employer. She was able to perform as requested until she moved to an area where she had to use her

feet and hands.  She got tired.  They told her there were no jobs available there for her.

She gets upset stomachs from all of her medication. She started taking Protonix in approximately 2002, and it controls her upset stomach.

Questioned by counsel, she described her prior household work, fixing her bed, and washing dishes.  She has persistently been unable to lift heavy things.  She drops things, such as when she lifts a heavy pot of food.

She described the interaction of her Paxil and her Provigil.  The Paxil is relaxing.  The Provigil keeps her awake and alert.

When awakened by her pain she is up for two hours. When she returns to bed she puts on the C-PAP machine back on again.  She wakes up at about 3:00 to 4:00 a.m., is up then until about 6:00 a.m., then goes back to sleep.  She might then be in bed all day.

4

Her sleep problems and her depression together cause her to have difficulty remembering things.  She is very forgetful about appointments.

She stated that her left hand is of little use to her.  Both hands were subjected to surgery in 1990.  She can not press down with her hands.

Her fibromyalgia is symptomized by very severe sharp pain every day in all of her joints and her lower back.  In humid weather or during rains, and in cold and in hot weather, her pain is worse than very severe sharp pain.  Her treatment of this pain is to stay in bed, try to relax, use an ointment and massage her muscles. Activity also makes her pain get worse.  She has no daily activities.  However, she does go to the grocery store, where she goes right to what she needs and places it in her cart.  She does not do a weekly shopping trip.

She was asked if she felt better or worse or the same after certain activities.  She said, "All the worse, the worse,

it's always the same." Tr. 821. Water therapy helped her for a little while, then her pain came back.

She described her neck pain and noted that she had a shot in the neck on July 30, 2005. On December 13, 2005 she stated that the shot had helped. The helping effect of the shot had ended, however, as of January 6, 2006.

Her depression affects her two to three times a week. She stays in bed and cries. Her sickness and stress make her depressed. Her Ativan helps in controlling her depression. She tries to keep her life stress free.

The vocational witness stated that the plaintiff has seven past relevant work experiences. If she can lift up to twenty pounds occasionally and ten pounds frequently, and is limited as to overhead reaching with her right dominant hand, could not do a job with rapid, repetitive use of the arms, or a job requiring repetitive bending or twisting, she could perform work as a salesperson or as a gluer. If the plaintiff's condition were to require a sit-or-stand option, jobs can be

(and are) identified that she could perform.  If she is limited to only occasional use of her arms, light and sedentary jobs that she can perform are identified by the vocational witness.

The vocational witness stated that an acceptable rate of absenteeism is no more than two days a month.  He stated that a low stress job would be unskilled work without quotas or piece rates, no significant interaction with other persons, no trying to persuade other persons.

On April 13, 2006, the ALJ issued his decision denying the plaintiff benefits.  Tr. 14-21.  The Appeals Council denied the plaintiff's request for review (Tr. 7-9), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed her complaint with this court on September 5, 2006.  The defendant filed an answer to the complaint and a copy of the administrative record on November 13, 2006.  Pursuant to Local Rules 83.40.4 and 83.40.5, the plaintiff filed her brief on December 28, 2006 and the

7

defendant filed her brief on January 26, 2007.  No reply brief has been filed.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported

8

by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id*. at 706-707.  In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4)

9

whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §404.1520 and 20 C.F.R. §416.920.

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that she is unable to engage in her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date, that she has severe impairments, that her impairments either separately or in combination do not meet or equal any listed impairments, and that she is not able to perform her past relevant work.   The ALJ further determined

that the plaintiff has the residual functional capacity[1] to perform light and sedentary jobs identified by the vocational witness as appropriate to Ms. Rivera's residual functional capacity to perform a limited range of unskilled jobs.

On the basis of these findings, the ALJ found the plaintiff not to be disabled.

The plaintiff argues that the ALJ erred in finding that her seizure disorder was not severe.  The defendant argues that the ALJ's decision that the seizure disorder does not have more than a minimal effect on her physical or mental abilities to perform basic work activities is supported by substantial evidence.

The plaintiff in her testimony did not speak about disabling characteristics attributable to her seizure disorder. There is not any evidence that the plaintiff's seizure disorder

---

1.  "Residual Functional Capacity" is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  *Burnett v. Commissioner of Social Security Adm.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

has any effect upon her ability to perform basic work activities apart from the times when she is about to have, or is having or has had a seizure.  It is not argued by the defendant that the time of a seizure and the prospect of recurring seizures would not affect the ability to perform basic work activities.  But the plaintiff had no seizures for a substantial period of time before 1998, stopped seizure disorder medications in 1998, and did not have another seizure until January of 2004.  We agree with the defendant that since the seizures are very infrequent and do not give rise to limitations or treatment apart from the time when a seizure occurs, the finding that this is not a severe impairment is supported by substantial evidence.

    The plaintiff argues that the ALJ erred by failing to consider the record as a whole and by ignoring competent evidence.  The plaintiff argues that the ALJ required objective signs and findings to substantiate fibromyalgia, an error the plaintiff asserts in that fibromyalgia is not diagnosed or characterized by objective signs and findings.  The ALJ did not reject a diagnosis of fibromyalgia, but did rather consider the

12

plaintiff's fibromyalgia to be a severe impairment.  Tr. 16.
The ALJ has attributed a reduced residual functional capacity
in part to fibromyalgia.  The plaintiff does not state in
particular the fibromyalgia symptom or symptoms that were
presented in her testimony but not accepted by the ALJ.  The
ALJ did find the plaintiff not to be credible as to the
statements made by her about the intensity, duration and
limiting effects of her symptoms.  Tr. 18.  The plaintiff has
construed the ALJ's determination that the intensity and
duration of her symptoms are not as great as the permanent 8
out of 10 that she asserts as a rejection of fibromyalgia.
Although the ALJ did not cite specific grounds for adverse
credibility findings, such grounds are apparent from the
record.  For example, the plaintiff testified that she
experiences tiredness, drowsiness and sleepiness from her Paxil
medication that she takes every day at 8:00 a.m., getting
sleepy from about 10:00 a.m. to about noon.  She also testified
that she takes Ritalin at 9:00 a.m., and that it makes her "up"
until noon.  Tr. 780-781.  The ALJ heard inconsistent testimony
from the plaintiff and was required to determine a residual
functional capacity based upon such inconsistent testimony.

13

The ALJ determined the residual physical functional capacity of the plaintiff to be to lift ten pounds frequently, to lift twenty pounds occasionally, to stand and/or walk for six hours and to sit for six hours.  The ALJ found her residual functional capacity to be to perform jobs requiring no greater exertion than permitted given her residual physical functional capacity and allowing for an option to sit or stand, requiring no overhead reaching with the right dominant arm, requiring no more than occasional use of the arms, involving low stress, being unskilled and not requiring significant interaction with other persons and not requiring production of quotas.  Tr. 17.  The ALJ had used this residual functional capacity in one set of questions to the vocational witness and the vocational witness had said that such a person could perform certain jobs available in the economy.  The ALJ considered all of the

evidence and made the determination.  It is supported by substantial evidence.  It is recommended that the appeal of the plaintiff be denied.

>                                        */s/ J. Andrew Smyser*
>                                        J. Andrew Smyser
>                                        Magistrate Judge

Dated:  February 16, 2007.